# WHITING *v.* DAVIDGE.

CONTRACTS; ATTORNEY AND CLIENT; AFFIDAVITS OF DEFENSE.

1. Where a contract between attorney and client, after providing for the payment of a fee of $1,000 to the attorney for professional services to be rendered, and specifically what such professional services were to consist of, concluded with a provision that one half of the sum should be paid immediately upon the execution of the contract, and the balance at the termination of a pending suit in which the client was interested but to which he was not a party in event that he should become a party, but was silent as to the time for the payment of such balance in event that he should not become a party, it was held that, notwithstanding the client never became a party to the suit, which was settled shortly after the agreement was made, the balance of the fee was payable to the attorney; the proper construction of the contract being that the attorney should receive $1,000 for his services in any event, but that if the client should become a party to the pending suit, the payment of one half of the fee should await the termination of the suit.

2. Error or mistake or misrepresentation or fraud in the reduction of an agreement to writing or in its execution is no defense in an action at law on the contract, especially where it appears that the defendant, although having full opportunity to read the paper, signed it without carefully reading it; his remedy, if any, for the correction of the wrong, is in another forum.

3. While in contracts between attorney and client, even when the relation is inchoate, the utmost fairness on the part of the attorney is required, and where reasonable doubt exists it should be resolved against the attorney, yet an allegation of wrongdoing on his part made after his decease, which in all probability could neither be proved nor disproved under the law, must be received with disfavor.

4. In a suit by the representatives of a deceased attorney upon a contract for professional services performed under it, where the affidavit supporting the declaration expressly alleges that the services required under the contract were performed, it is incumbent upon the defendant, if he takes issue upon that ground, to expressly deny in his affidavit of defense the rendition of such services; intimations and indirect statements will not suffice.

No. 1332.    Submitted December 8, 1903.    Decided January 19, 1904.

HEARING upon an appeal by the defendant from a summary judgment of the Supreme Court of the District of Columbia, for the plaintiff for want of a sufficient affidavit of defense in an action to recover upon a contract for professional services rendered the plaintiff's testator.                    *Affirmed.*

The COURT in the opinion stated the case as follows:

Walter D. Davidge, now deceased, long a member of the bar of this court, was retained during his lifetime by the appellant, Guy F. Whiting, to defend and protect his interest in a certain suit pending in the supreme court of the District of Columbia in the name of Mary F. Leiter against the Metropolitan Railroad Company. There was a contract in writing between them, upon the construction of which the present controversy depends, and which is in the following terms:

Memorandum of an agreement between Guy F. Whiting and Walter D. Davidge, both of Washington, D. C.

The said Whiting agrees to pay said Davidge $1,000 for his professional services in respect of the interest of said Whiting in the case of *Leiter* v. *The Metropolitan Railroad Company et al.,* in equity in the supreme court of this District.

In consideration whereof the said Davidge agrees to examine the proceedings in said cause and the interest of said Whiting as affected thereby, and advise as to the expediency of the latter becoming a party complainant in said cause; and if, in the judgment of said Davidge, expedient that said Whiting should not become such party, then said Davidge agrees to give said Whiting at all proper times counsel and advice touching the said interest during the continuance of said cause, and to keep informed as to the proceedings therein, and if at any time necessary in the judgment of said Davidge for the defense or promotion of such interest to participate actively in said cause by making said Whiting a party thereto or otherwise.

One half the said sum of one thousand dollars to be paid upon the execution of these presents, and the other half at the termination of said cause if the said Whiting shall become a party thereto.

Signed in duplicate this 17th day of March, 1900.

(Signed)                    . GUY F. WHITING.

WALTER D. DAVIDGE.

As stipulated in the agreement, the sum of $500 was paid by Whiting to Davidge upon the execution of the contract, and the latter entered upon the performance of the contemplated services.

Whiting, it appears, was the owner of certain shares of the capital stock of the Metropolitan Railroad Company, stated to be less than 100 in number, and as such owner had an interest in the suit then pending of *Mary F. Leiter* v. *The Metropolitan Railroad Company* and other persons, which Mrs. Leiter, as the owner of 1,270 shares of the stock, had instituted on behalf of herself and all other stockholders who might intervene and contribute to the costs of the suit, to prevent a contemplated merger of the property and franchises of the company with

other and less prosperous street railway companies in the District, for an accounting, and for the appointment of a receiver. By the advice of Davidge, Whiting did not become a party to the suit; and we are informed that, very soon after the execution of the agreement, that suit was dismissed by the entry of a consent decree. On June 18, 1900, the interest of Whiting in the Metropolitan Railroad Company was terminated by the sale of his stock to the Washington Traction & Electric Company, which was the company that sought to absorb the Metropolitan Railroad Company and other street railroad companies in the District. Some correspondence followed between Davidge and Whiting in regard to the fees of the former, the tenor of which is not disclosed; but there was no settlement of the matter. Whiting states that he supposed that the claim against him had been dropped.

Davidge died on October 7, 1901, and this suit to recover $500, the residue claimed to be payable under the contract, was instituted by his executor on March 5, 1903. With the declaration in the case there was filed an affidavit of the plaintiff intended to serve as a basis for summary judgment under the 73d rule of the supreme court of the District. In this affidavit it was alleged that Davidge had rendered all the professional services which he had contracted to render; and that, as the result of these services, the defendant Whiting had been enabled to sell his stock at a higher figure than had been paid to any other stockholder of the Metropolitan Railroad Company.

The defendant pleaded the general issue, and filed therewith a counter affidavit of defense. The substantial statement of said affidavit, so far as concerns the present issue, is as follows:

"For the services so agreed to be performed by said Davidge in making the examinations and reports aforesaid, and giving the advice and counsel aforesaid, I agreed to pay him the sum of five hundred dollars ($500) in cash; and I also agreed to pay to said Davidge an additional sum of five hundred dollars ($500) in the event that I should become a party to said cause (the Leiter suit) and the said Davidge should act as my attorney as such party.

"And I further swear that it was mutually agreed and understood between and by myself and the said Davidge that said Davidge was only to receive the sum of five hundred dollars ($500) for his services in the event that I did not become a party to said cause. At my request he, the said Davidge, undertook to reduce the said agreement to writing, and later the same day handed me a paper to sign as embodying the said agreement. I declined to sign the paper so presented because it did not correctly state our agreement in that it provided that he should receive the sum of $1,000 whether I became a party to said equity suit or not. I called his attention to the fact that the paper writing so by him presented to me for signature in the particular mentioned did not correctly recite the agreement we had made. He thereupon took it back, and said he would make the necessary correction. Subsequently he brought me a paper to sign which he represented correctly embodied the agreement. Without again carefully reading over this paper so prepared by him, I did notice the concluding clause thereof, which was as follows: 'One half of the said sum of $1,000 to be paid upon the execution of these presents and the other half at the termination of said cause if the said Whiting (affiant) shall become a party thereto.' Supposing at the time that this clause meant that no further or other charge would be made by said Davidge for services to be rendered in the premises, over and above the said sum of $500, unless it was found necessary or expedient for me to become a party to said equity cause, I signed said paper and handed him my check for $500. I very well knew at the time that if for the protection of my interests in said stock it became necessary or expedient for me to intervene in said equity cause and prosecute my rights therein, it would entail upon said Davidge great labor in the preparation of pleadings and arguments, and for such labor, if incurred, I was willing to pay and agreed to pay an additional sum of $500. But with little or no assistance from him, the said Davidge, with no attendance by him in my behalf at any hearing in said cause, with no report from him of the proceedings and progress of said cause, and no opinion from him

touching the expediency of my intervention therein, I personally settled the controversy in the city of New York with the lawyer of the Washington Traction & Electric Company, myself drawing the memorandum of agreement upon which such settlement was made. This memorandum the said Davidge did not even see prior to its execution, and then I showed it to him purely out of courtesy and so that he might dismiss the matter from his mind.

"I never became a party to said equity cause, and the additional $500 referred to in the contract so as aforesaid entered into by and between the said Davidge and myself was never payable, and is not now due and owing by me."

Upon these pleadings and affidavits motion was made on behalf of the plaintiff for judgment under the 73d rule, and it was stipulated in writing between the counsel for the parties that the contract referred to should be considered as part of the pleadings. The court below held the defendant's affidavit of defense to be insufficient, and rendered judgment for the plaintiff for the amount claimed, with interest. From this judgment the defendant has appealed to this court.

*Mr. H. Prescott Gatley* and *Mr. Samuel H. Maddox,* for the appellant:

1. The object of the 73d rule is not to abolish trial by jury or to deprive a person acting in good faith from contesting a suit brought against him in every legitimate way. Its object is to prevent sham and fictitious defenses to the hindrance and delay of justice. *Lawrence* v. *Hammond,* 4 App. D. C. 467. The affidavit should not in any case be tested as by a demurrer to a plea. *Bailey* v. *District of Columbia,* 4 App. D. C. 356; the 73d rule and affidavit of defense thereunder are to be construed liberally in favor of the defendant. *Strauss* v. *Hensey,* 7 App. D. C. 289; *Pumphrey* v. *Bogan,* 8 App. D. C. 449.

The affidavit here raises a distinct issue of fact as to whether or not the services agreed to be performed by Mr. Davidge were

actually performed by him, and as to this question of fact the defendant has the right to have it determined by a jury.

2. The court below disposed of the case by holding that the contract was an absolute agreement to pay to Mr. Davidge the sum of $1,000. A careful reading of the contract shows that it is divisible in that it provides for services to be rendered by Mr. Davidge in the event that Whiting did not become a party to the Leiter case, and services to be performed in the event that he did become a party thereto. Is it not reasonable that an attorney would charge less for services to a client in representing his interests as affected by a pending suit to which he was not a party than he would if he subsequently became a party? Certainly if the client were a party to the cause it would entail much more labor upon the attorney and consume much more of his time. *Noonan* v. *Bradley,* 9 Wall. 394, 407. In construing this contract the court should look to the language employed, the subject-matter, and the surrounding circumstances, and should place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so judge of the meaning of the words and of the correct application of the language to the things described. *Merriam* v. *United States,* 107 U. S. 437, 441; *Nash* v. *Towne,* 5 Wall. 689, 699.

*Mr. Nathaniel Wilson* and *Mr. Clarence R. Wilson* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

In the argument before us the main controversy is as to the true construction and meaning of the written contract which has been set forth in the foregoing statement. This contract is comprised of three clauses in three separate sentences, of which the first provides for the payment of $1,000 for professional services to be rendered, and the second provides specifically what professional services are to be rendered. These two clauses in themselves constitute a perfect contract, except per-

haps in the one particular, that no time is specified in them for the payment of the money; but this omission, if omission it were, would be supplied by the law, which would make the money payable upon the completion of the services. Apart from this question as to the time for payment, the contract set forth in these two clauses is complete. It is at the same time one and indivisible, as are the professional services to be performed, although these latter include various items and involve alternative contingencies that Whiting might or might not become a party to the pending suit. There is no ground whatever in these two clauses for any pretense that a part of the sum total was to be paid for certain specified services, and another part for certain other services. In other words, the consideration on both sides is one and indivisible.

But in the third clause or third sentence of the contract there is a provision as to the time for payment of the specified amount; and this is, that one half of the sum should be paid immediately upon the execution of the contract, evidently as a retainer, in accordance with the custom of lawyers; and the other half at the termination of the Leiter suit, in the event that Whiting should become a party thereto. The writing, however, is silent as to the time for the payment of this second half in the event that Whiting should not become a party to the Leiter suit; and he claims that it is the meaning of the contract, and that in fact it was the agreement of the parties to it, that this second half was not payable at all in that contingency. But this contention we must regard as untenable. Such a construction of the contract would change words that denote merely a contingency into words that denote a condition; and the two things, contingency and condition, are very different. There is nothing whatever conditional in the language of the contract. There is no intimation anywhere in the contract that the services stipulated to be performed by Davidge should not be paid for unless Whiting became a party to the Leiter suit. On the contrary, the plain import of the contract is that the services to be rendered, whatever they should be, and which ever of the contemplated contingencies should occur, should be compensated

for by the payment of $1,000. The question of making Whiting a party to the suit or keeping him out of it was one of the questions to be determined, and one of the items of professional service to be rendered. That question runs through the whole contract; it was one of the things to be kept in view all the time. Counsel and advice in regard to it, management of the case in the event of intervention, and counsel and advice in regard to his interest in the event of nonintervention, but always keeping the suit in view, were the three general items of professional service to be rendered; and it is very plain that the parties entered into the contract with all these contingencies and with all these elements of professional service in mind, and with the view that the sum of $1,000 should be paid for the professional services of Davidge, whichever contingency should occur.

There can scarcely be a doubt that the understanding of the parties was that, if it became necessary or expedient for Whiting to intervene as a party to the Leiter suit, the determination of that suit would finally determine also the rights of Whiting and at the same time terminate the professional services to be rendered by Davidge. The provision, therefore, in the last clause of the contract, that the second half of the stipulated fee should be paid at the termination of that suit in the event of Whiting's becoming a party thereto, was the equivalent in their minds of the proposition that in such specified contingency it should not be payable until such termination of the suit. The provision of the contract is, not that this second half of the stipulated fee should not be demanded at all in a certain contingency, but that in the event of the happening of the contingency it should not be demandable before the termination of the suit. If the purpose of the third clause was to modify the provisions of the previous clauses, it should have specifically so stated. In our opinion it is not capable of that construction.

This was the view taken of the contract by the court below; and we think that it is the correct view.

Assuming this to be the proper construction of the paper writing before us, as we think it is, we find an intimation in

the appellant's affidavit of defense that Davidge perpetrated a fraud upon the appellant by representing the paper to be what in fact it was not. But the paper was open to the appellant for examination; and if he signed it, as he says he did, without due examination, he has only himself to blame for his neglect to exercise due care in the premises. He states that he had previously refused to sign a paper obligating him to pay the sum of $1,000 in any event, because this was not his agreement with Davidge, and that Davidge subsequently presented the present paper for his signature with the representation that it correctly embodied their agreement, which, as he claims, was that he should pay the second sum of $500 in the event that he should be made a party to the Leiter suit. But, although by his own version of the transaction, put upon his guard by this first alleged failure to reduce the agreement correctly to writing, he admits that he signed this paper without a careful reading of it, and relying only upon what he supposed to be the meaning of the last clause, which he says that he did notice. But this excuse, of course, cannot avail him in the present suit. If there was error, or mistake, or misrepresentation, or fraud, in the reduction of the agreement between the parties, or in the execution of the contract, there is a remedy for the correction of the wrong; but it is not in this suit. While in contracts between counsel and client, even when the relation is only inchoate, as it was in the present case at the time of the execution of the contract in controversy, the utmost fairness is required, and doubt should be resolved, where reasonable doubt exists, against the contention of the counsel; yet an allegation of wrongdoing on the part of one now deceased, which in all probability could neither be proved nor disproved under the law, must be received with disfavor.

In the affidavit of defense there is also another serious intimation—for it is no more than an intimation—that Davidge did not render the stipulated professional services required by the contract. And to this intimation the fact of the voluntary dismissal of the Leiter suit by the parties thereto shortly after the execution of the contract between Whiting and Davidge gives

some degree of plausibility. But there is no distinct positive allegation or averment by the appellant that Davidge did not render the stipulated services. In the affidavit for the plaintiff it had been positively averred that he had rendered the services required by the contract; and it was incumbent on the defendant, if he would take issue with the plaintiff on that ground, to deny the rendition of such services. This he does not do. If there had been such failure of performance of service on the part of Davidge, it would have been easy for the defendant to have said so in plain language. He says it only by indirection. He says that, with little or no assistance from Davidge, with no attendance by him at any hearing of the cause, with no report from him of the progress of the cause, and with no opinion from him touching the expediency of intervention by Whiting in the suit, he personally settled the controversy himself in New York, apparently by the sale of his stock. Plainly this is no sufficient allegation that Davidge did not render the stipulated services. It is intimation and indirection, and not allegation upon which an issue could be framed for a jury.

We are of opinion that the judgment appealed from was justified by the rule of the court below and by law, and that it should be affirmed. It is accordingly hereby affirmed with costs. And it is so ordered. *Affirmed.*