**HANKIN v. SPILKER.**

**No. 877.**

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 16, 1950.

Decided March 10, 1950.

4. 3 Moore's Fed. Practice, § 60.01, et seq. Cf. Phillips v. Negley, 117 U.S. 665, 6 S.Ct. 901, 29 L.Ed. 1013.

Thomas B. Scott, Washington, D. C., with whom Charles W. Mander, Washington, D. C., was on the brief, for appellant.

Alfred Goldstein, Washington, D. C., with whom James A. O'Shea, Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

This appeal arises from a judgment denying recovery on five promissory notes. The notes in question had been executed by appellee Mrs. Spilker for legal services rendered her by appellant Hankin in ·a divorce action. In the court below Mrs. Spilker defended on the ground of misrepresentation by Hankin when the notes were signed, and a jury returned a verdict in her favor. Hankin brings this appeal, assigning some fifteen errors. The decisive question is whether Mrs. Spilker is precluded by the doctrine of res judicata from denying liability on the notes.

Without recapitulating all the facts presented in the record and the contradictory testimony of the witnesses, it appears that Mr. Hankin was engaged by Mrs. Spilker to represent her in a divorce action and in an ensuing property settlement. Other attorneys were also engaged by her at various stages of the divorce litigation, with Mr. Hankin acting as co-counsel. It seems undisputed that he did a major portion of the work in the case, although in the end he did not take the case to trial. While he was serving as co-counsel with the attorney who finally tried the case, Mr. Hankin obtained from Mrs. Spilker seven promissory notes for a total of $2000, made out to him, five of which are the subject of this litigation.

These seven notes were executed on December 9, 1946 in the office of another attorney.[1] They were made out in a numbered series extending from 1 to 7. Number 1 was a demand note for $500, and each of the others was for $250. The maturity dates on these latter notes fell at three month intervals from date of execution, with number 7 maturing on June 9, 1948.

The demand note was paid a few days later, but when note number 2 fell due, it was not paid. Hankin filed suit thereon, and after a trial on the merits recovered judgment. The record in that action has been incorporated into the record here. Because of the question of res judicata, it is necessary to recount the proceedings in that first suit at some length.

The action was begun by pleading the note in full. In her answer, Mrs. Spilker

1. Five notes were date December 7, 1946 but all were apparently signed December 9. This discrepancy resulted from a conference on December 7 at which several changes in the compensation for Mr. Hankin were made.

said "that plaintiff, as such attorney of record, refused to proceed in said divorce action involving a property settlement, unless the defendant would execute the note, which is the basis of plaintiff's suit, that the defendant acting under duress and in fear of losing her divorce action and property, was unlawfully coerced into executing the said note." She also defended by saying that she had to engage other counsel at a cost of $1250, that the note in suit was for an exorbitant and unconscionable fee for legal services, and that she had already overpaid Mr. Hankin for his services.

Thereafter, Hankin filed a motion to strike the answer, chiefly on the ground that it contained scandalous and libelous matter. But he also stated that his refusal to proceed with the case unless the note were signed was neither "duress" nor "unlawful coercion." In her reply to the motion, Mrs. Spilker stated: "no relief can be granted where a contract lacks the essential element of consent," and that since the note was executed under duress it was voidable. The motion to strike was overruled.

Before trial Mrs. Spilker amended her pleadings by filing a counterclaim seeking recompense for the amount she had paid the attorney who took her case to trial, and she sought a determination that the amount already paid Hankin was to be considered full payment for the services. She also demanded "that all the notes in the total of Two Thousand Dollars, $2,000.00, secured under duress from the defendant by plaintiff, including the note in suit, be declared null and void and of no effect * * *"

The case was tried by judge and resulted in a general finding in favor of plaintiff Hankin, who was awarded judgment on the note, and a disallowance of the counterclaim. Mrs. Spilker took no appeal. The issue was first raised by plaintiff Hankin in a motion for summary judgment, supported by affidavit. The motion was denied on the grounds that "(a) it did not appear that the moving party was entitled to judgment as a matter of law, and (b) it did not appear that there was an absence of a genuine issue remaining for trial." Accordingly the case proceeded to trial, before a jury.

Mrs. Spilker's chief defense in the present action was that of misrepresentation, rather than duress and coercion. She pleaded: "that the execution and delivery of the said notes were obtained and defendant's signature thereto induced by the plaintiff upon the misrepresentation that if execution and delivery of the said notes were not made the best interests of defendant in said litigation would not be served * * *" She also stated: "that she had, prior to the execution of said notes, paid plaintiff in full for all professional services performed by him on her behalf and there was nothing due and owing him and no good and sufficient consideration for the alleged signing and execution of said promissory notes." In other words, she was again denying the validity of the contract for lack of mutual assent in its execution, but this time for misrepresentation rather than duress and coercion. She also claimed failure of consideration and payment for plaintiff's services to the extent of their value.

There seems to be no doubt that these were substantially the same issues defendant had raised in defense to the action on note number 2 and therefore, under the rule of res judicata, not again available to her unless she came within one of the exceptions to that rule.

The general application of the rule has been carefully spelled out in an early Supreme Court case[2] and in several decisions in this jurisdiction.[3] And there are many decisions which more specifically establish the law governing cases like the one now before us. One of the basic rules is that a previous judgment is conclusive of

2. Cromwell v. Sac County, 94 U.S. 351, 352–353, 24 L.Ed. 195.
3. Great Atlantic & Pacific Tea Co. v. West, 56 App.D.C. 103, 10 F.2d 898; Gill v. Gill, 79 U.S.App.D.C. 357, 147 F.2d 154; Smith & Gottlieb v. Cheatham, D.C.Mun.App., 31 A.2d 676; Scholl v. Tibbs, D.C.Mun.App., 36 A.2d 352.

those matters which were "comprehended and involved" in the decision. "Whatever is necessarily implied in the former decision is, for the purpose of the estoppel, deemed to have been actually decided." [4]

The estoppel of res judicata is not confined "to a finding upon a question purely of fact, or upon a mixed question of law and fact, but * * * it extends as well to a decision construing an agreement between the parties, and to a decision which determines the legal rights of the parties on a state of facts common to both suits, although the causes of action are different." [5] The proper test would seem to be "whether the substance of the rights or interest established in the first action will be destroyed or impaired by the prosecution of the second." [6] When a new defense or a counterclaim, or a different statement of a cause of action would impair or destroy rights established in the first action, then the party raising such issue is estopped from relitigation. It would amount to a collateral attack upon such a judgment. It would defeat the fundamental purpose of the doctrine of res judicata: that of securing "the peace and repose of society by the settlement of matters capable of judicial determination." [7] The estoppel thus should be as broad as the issues determined in the prior judgment and merged therein.

Though payable in periodic installments, what we have here is quite plainly an entire and single contract. The notes (like bond coupons or other evidence of installment payments) are all parts of the same contract; they merely evidence the time and manner of payment. The crucial point in such controversies is whether the particular defense is equally applicable to all the notes in the series. " * * * if such defense is interposed against either note, obligation, or installment and determined either to be or not to be an existing and sufficient defense, such determination is conclusive of the existence or non-existence of such defense in any subsequent action upon any other note, obligation, or installment." [8]

A mere change in the form of the action does not enable a party to escape the force of the prior judgment. [9] By the same token, a mere restatement of a defense in different words does not defeat the doctrine. As long as the identity of the issues can be ascertained, even though the methods and theories of presentation may differ, the adjudication concludes the second litigation. [10] And the true test of the identity of the issues is the identity of the facts necessary to maintain the causes of action. [11] A party may not prove a set of facts under one theory and then relitigate the same facts, claiming that they amount to a different legal conclusion. This would be confusing grounds of an action with the cause of action itself. Even when there are several grounds on which an action may

4. Crompton & Knowles Loom Works v. Brown, 28 Misc. 513, 59 N.Y.S. 556, 557, quoting Pray v. Hegeman, 98 N.Y. 351. See also Reich v. Cochran, 151 N.Y. 122, 45 N.E. 367, 37 L.R.A. 805, 56 Am. St.Rep. 607.

5. Southern Minnesota Ry. Extension Co. v. St. Paul & S. C. R. Co., 8 Cir., 55 F. 690, 696, citing: Tioga R. R. v. Blossburg & C. R. Co., 20 Wall. 137, 22 L.Ed. 331; Merriam v. Whittemore, 5 Gray 316, 71 Mass. 316; Goodenow v. Litchfield, 59 Iowa 226, 236, 9 N.W. 107, 13 N.W. 86; Whitehurst v. Rogers, 38 Md. 503; Clark v. Wiles, 54 Mich. 323, 20 N.W. 63; Mueller v. Henning, 102 Ill. 646; Bigelow, Estoppel (5th Ed.) 99.

6. Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 165 N.E. 456, 458.

7. Southern Pac. R. Co. v. United States, 168 U.S. 1, 49, 18 S.Ct. 18, 27, 42 L.Ed. 355.

8. 2 Freeman, Judgments (5th Ed.), § 898. See also, 50 C.J.C., Judgments, § 712 (a) (2) and 736 (b).

9. Watkins v. Madison County Trust & Deposit Co., D.C.N.D.N.Y., 40 F.2d 91, 97; Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., supra, 165 N.E. at pages 457, 458.

10. Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., 8 Cir., 115 F.2d 1, 139 A.L.R. 1490.

11. Union Central Life Ins. Co. v. Drake, 8 Cir., 214 F. 536, 545; Hutchinson v. Sperry, 3 Cir., 1 F.2d 302, 304.

lie, together they may add up to only a single cause of action or a single defense.[12]

"If it appears that the first judgment involved the whole claim, or extended to the whole subject-matter, and settled the entire defense to the whole of a series of notes or claims, and adjudicated the whole subject-matter of a defense equally relevant to and conclusive of the controversy between the parties, as well in respect to the claim or defense in judgment as in respect to other claims and defenses thereto, pertaining to the same transaction or subject-matter, then the first judgment operates as an estoppel as to the whole. * * *"[13]

Judged by these well-defined tests, we must hold that the defendant had no right to assert in this action the defense of misrepresentation. It is true that misrepresentation as a defense differs from that of duress and coercion. It is also true that since each note constituted a distinct cause of action as it fell due, the defendant could theoretically have presented different defenses to the individual notes as they were sued on. But that is not what she did. Her defense in the original suit was duress and coercion and struck directly at the heart of the contract. She specifically challenged its validity. She did not allege that her defense went solely to note number 2 or claim that the circumstances of the execution of that note were any different from those of the other notes. On the contrary, she herself, by her answer to the first suit, put into issues all the notes and the basic contract itself. Her defenses of duress and coercion directly repudiated the mutual assent necessary to the validity of the contract. And by her counterclaim she sought an adjudication that she owed Hankin nothing and "that all the notes in the total of Two Thousand Dollars, $2,000.00, secured under duress from the defendant by plaintiff, including the note in suit, be declared null and void and of no effect * * *"

Mutuality of assent to the basic contract itself having been specifically placed in litigation by her defenses and counterclaim in the first case, she was thereafter estopped from relitigating the same question. On that issue she had her day in court and lost; whatever other defenses she may have had to the other notes, the right to deny assent was not again available to her. This was not a situation where an equitable defense and counterclaim were never filed,[14] or one in which the defense went only to part of the contract.[15] Under the circumstances of this case the first judgment was conclusive on the issue of assent.

Reversed and remanded with instructions to set aside judgment in favor of defendant and to enter judgment on the notes for plaintiff.

12. Mendez v. Baetjer, 1 Cir., 106 F.2d 163. In Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 602, 71 L.Ed. 1069, in a tort action, the Supreme Court stated: "A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show. The number and variety of the facts alleged do not establish more than one cause of action so long as their result * * * is the violation of but one right by a single legal wrong." See also: Wilcox & Gibbs Sewing Mach. Co. v. Sherborne, 3 Cir., 123 F. 875, which quotes Lord Ellenborough on estoppel in the case of Outram v. Morewood, 3 East. 346.

13. Lacy v. Eller, 8 Ind.App. 286, 35 N.E. 847, 848, quoting Kilander v. Hoover, 111 Ind. 10, 11 N.E.796. See also: Equitable Life Assur. Soc. v. McKeithen, 130 Fla. 568, 178 So. 127; Beloit v. Morgan, 7 Wall. 619, 74 U.S. 619, 19 L.Ed. 205; Fitch v. Stanton Tp., 8 Cir., 190 F. 310; Jones v. Silver, 97 Mo.App. 231, 70 S.W. 1109; Ward v. Sire, 52 App.Div. 443, 65 N.Y.S. 101; Puffer Mfg. Co. v. Rivers, 10 Ga.App. 154, 73 S.E. 20; Furneaux v. First Nat. Bank, 39 Kan. 144, 17 P. 854, 7 Am.St.Rep. 541; Defries v. McMeans, 121 Iowa 540, 97 N.W. 65.

14. Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., supra; Trescott v. White, 7 Cir., 11 F.2d 845.

15. Kilander v. Hoover, 111 Ind. 10, 11 N.E. 796.