**ENGSTRUM et al. v. McCART et al.**

**No. 1246.**

Municipal Court of Appeals
District of Columbia.

Argued Oct. 20, 1952.

Decided Nov. 4, 1952.

John Cabot White, Washington, D. C. (W. Byron Sorrell, Washington, D. C., on the brief), for appellants.

Miller W. Marshall, Washington, D. C., for appellee McCart.

Charles W. Proctor, Washington, D. C., for appellee Air-O-Spra Corporation, but filed no brief on its behalf.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

CAYTON, Chief Judge.

In a suit for specific performance plaintiff obtained a judgment ordering the issuance to him of 70 shares of stock in a corporation which had acquired ownership of an invention in which he had a twenty percent interest. Defendants in the suit have brought this appeal.

Because defendants elected to offer no evidence the facts are revealed entirely by the testimony of plaintiff. The transaction had its origin in an agreement evidenced by a written contract between defendant Paul Engstrum and the plaintiff Samuel W. McCart, an attorney. The contract was dated March 18, 1948, and in its parts most pertinent to this litigation it provided that in consideration of "business and legal advice and services in the future" Engstrum would pay to McCart "twenty percent of all net profits derived from the manufacture, acquisition, sale or net royalties on either or both of two surface spray de-

vices."[1] In the same paragraph it was provided, "In the event that the rights to make either sprayer is sold outright, Samuel W. McCart shall be an owner of a twenty percent interest in the device sold and his ownership shall date back to the date of execution hereof but until such time he shall not be an owner of a part interest." (There were also other provisions which we shall discuss later.)

Plaintiff testified that he performed the services required of him under his contract and that he later learned that Engstrum had sold or assigned his patent rights in the spray gun to Air-O-Spra Corporation. Received in evidence was an assignment by which Engstrum and his wife Kathleen (who was a co-defendant below and is an appellant here) made a complete sale and transfer of all their right, title and interest in the invention to Air-O-Spra Corporation and authorized the Commissioner of Patents to issue letters of patent to said corporation. The uncontradicted evidence showed that the consideration for the transfer was the issuance of 350 shares of stock in the corporation, part to Engstrum and part to his wife.

The trial court filed a written opinion, finding the facts as above outlined and also finding that Mrs. Engstrum had knowledge of plaintiff's rights at the time the patent rights were sold to the corporation.[2] In addition the court found on uncontradicted evidence that Air-O-Spra Corporation was named as a nominal party to the suit, that it is a closely held corporation, and that the value of its stock cannot be ascertained.[3] The court also found that the corporation had not agreed to assume any of the obligations, debts or liabilities of the Engstrums to the plaintiff McCart.

The court ruled that plaintiff was entitled to have specific performance of his contract by delivery to him of twenty percent of the 350 shares of common stock of the corporation which had been issued to Mr. and Mrs. Engstrum, and to effectuate that ruling the court directed that the stock be called in and reissued in proportions prescribed,—twenty percent to plaintiff McCart and the balance in certain divided proportions to Mr. and Mrs. Engstrum.[4]

Challenging the correctness of the judgment appellants say that the trial court erred in ruling that Engstrum's breach entitled McCart to a twenty percent owner interest. They point out that under the contract McCart was to have a twenty percent interest only in the net profits or net royalties from the manufacture and sale of the product and that the contract was to run for a maximum of seventeen years. We agree that such is true as to profits and royalties; had Engstrum continued in ownership of the patent rights McCart's rights to share in profits could not have extended beyond the seventeen year period. But as we have seen, the Engstrums made a complete and outright sale of their patent rights. This action of theirs brought into operation the second or *alternative* provision of the contract which expressly provided, "In the event that the rights to make either sprayer is sold outright, Samuel W. McCart shall be an *owner of a twenty percent interest* in the device sold and his *ownership* shall date back to the date of execution hereof but *until such time he shall not be an owner of a part interest*." (Emphasis added.)

Therefore in ruling in favor of plaintiff and in decreeing that he should have twenty percent of the stock the trial judge was

1. Though the reference was to two separate devices only one seems to be involved in this litigation.

2. The record reveals no dispute as to this latter finding, nor any claim by Mrs. Engstrum that as wife or otherwise she was entitled to any special personal rights. On this appeal she and her husband have filed a joint brief and rely on the same contentions.

3. There was testimony that the stock was not listed on any exchange; that while there had been a few sales of stock, there was no regular market therefor; that the fair market value of the stock could not be determined through brokers or otherwise; that the value of the stock, if any, was purely speculative.

4. It was stipulated that the corporation was not to be a party to this appeal. The dispute is therefore entirely between McCart and the Engstrums.

merely ordering that defendants comply with the express terms of their contract which made McCart "an owner of a twenty percent interest in the devices sold." This right is emphasized by the disjunctive provision that "until such time he [McCart] shall not be an owner of a part interest." We think the language quoted leaves no question that McCart was to have the right to share in profits as long as Engstrum owned the patent rights but would be entitled to a twenty percent owner interest whenever Engstrum decided to sell the rights.

Appellants say that the two sets of provisions are repugnant one to the other. They argue that because the parties provided for various contingencies as to what would happen in the event of the death of either of the parties or their wives, this indicated that they had in mind that in the event of the death of both McCart and his wife before the seventeen year period elapsed the contract would be at an end. But we have no doubt that this referred only to a situation in which the Engstrums continued as owners of the patent device. When they undertook to sell it outright (McCart and his wife being still alive) they were required to recognize McCart's rights as owner of a twenty percent interest.

Having in mind what was said in Spilker v. Hankin, 88 U.S.App.D.C. 206, 188 F.2d 35, concerning contracts between attorney and client we have given close scrutiny to the contract in this case and to all the circumstances of the transaction. The contract was in some respects quite informal; but we find in it nothing from which it can be said that the attorney was given any unfair advantage or that the contract obscured for his benefit what the parties had in mind. The pleadings made no mention of such a defense, and the evidence gave not even a hint of any improper conduct, deception, or the slightest over-reaching on the part of the attorney. It recited a clear case of performance by him and breach by the defendants. And, as we have seen, defendants offered no testimony and plaintiff's evidence stood uncontradicted.

We are of the opinion that the case was correctly decided and that the trial court properly exercised its equitable powers. See Klepinger v. Rhodes, 78 U.S. App.D.C. 340, 140 F.2d 697, certiorari denied, 322 U.S. 734, 64 S.Ct. 1047, 88 L.Ed. 1568. See also Shulman v. Shulman, D.C. Mun.App., 86 A.2d 527, and cases there cited.

Affirmed.