## Elvin Logan v. The State.

1. Criminal Law. *Murder. Special venire. Neglect to summon.*
   In proper cases, where there has been a neglect by the sheriff to summon many of the names on the special *venire*, it should be quashed on motion. But where a special *venire* of sixty names is returned executed by summoning thirty-two, "the others not being found in the county," the return is *prima facie* true; and, in the absence of proof that it is false, or that some difficulty was experienced by the accused in getting a jury from those summoned, the verdict will not be reversed, on the ground that the court below refused on motion to quash the *venire.*

2. Supreme Court. *Practice in reviewing verdict.*
   In reviewing the judgment of the Circuit Court in a case of murder, the Supreme Court can look no further than to see whether the verdict is supported by competent and sufficient evidence. The concurrence of the circuit judge (who heard the evidence) in the propriety of the verdict is a fact to be considered by the Supreme Court.

Error to the Circuit Court of Rankin County.

Hon. Robert Leachman, Judge.

*H. R. Ware,* for the plaintiff in error.

1. The first error which the plaintiff in error alleges to have been committed by the court below was the action of the court in overruling the motion of the defendant to quash the special

*venire,* because the same was not executed according to law, and the order of the court in regard to summoning said *venire.* Substantially the order of the court was, that upon demand of the defendant a special *venire* of *sixty men* shall be drawn, from which a jury shall be selected to try said defendant, and that H. F. Shelton, sheriff, &c., be and he is hereby commanded to summon said *venire* to appear in and before said court. By the statute of the State, as by the order of the court, the defendant had a right to sixty men, from which he should select a fair and impartial jury. This right could not, either by the manifest fault of the sheriff to summon said sixty men, or by the action of the court below in sustaining said default, destroy such right of the defendant in a case of life and death. Yet the return of the sheriff is "executed on all marked with the letter 'S,' the remainder of said *venire* not being found in my county." It will be necessary to examine this *venire* so marked with the letter "S," as indicated by the sheriff, to show the manifest wrong and injury which has been done to the rights of the defendant as to the manner of selecting the jury which was to try him for his life. This examination will establish the fact that only *thirty-two* men were summoned by the sheriff, in place of *sixty ordered* by the court to be summoned, which order was only in strict conformity with the statute. Code 1871, §§ 275, 278, 279. It cannot be thought that any discretion or entire discretion is with the sheriff in a case of this magnitude, to summon at his pleasure as many of the *venire* as he chooses, and neglect or refuse to summon the remainder. Suppose he had only summoned one in place of sixty of the *venire,* would the court have been justified in sustaining such return? When, as in the case at bar, manifestly twenty-eight of the sixty men on the *venire* were not absent from the sheriff's county, his return was unmistakably erroneous, should not the court below have sustained the motion to quash, and have ordered a new *venire facias* summoned? It cannot be thought that § 226 of the Code of 1871 is the only remedy to protect a defendant from a false return of a sheriff. This more particularly applies to civil suits, and would, of course, be totally valueless to a class of defendants whose life was jeopardized by a sheriff's false return. It is

not, of course, contended that each man on the *venire* should be summoned, which would be an impossible thing in a majority of cases; but only in an extreme case, as the present, when scarcely enough men were summoned by the sheriff to allow the counsel for the prisoner to find out and state their peremptory challenges, and have a jury left, when the court must have known that this was a false return. The discretion of the court should have been exercised so as to have sustained the motion.

2. Counsel then reviewed the evidence, contending that the verdict was not warranted by the proof.

*G. E. Harris*, Attorney-General, for the State.

1. The court did not err in overruling the motion to quash the special *venire*. The ground of this motion was " because the same has not been executed according to law and the order of the court." The objection to the execution of the *venire* is that the court ordered a *venire* of " sixty men," and it was executed only on " thirty-two."

That ground is untenable. It is a matter of discretion in the Circuit Court. The laws for empanelling the jury are merely directory, and, when informally done, still it is legal. Code of 1871, § 2843. The record, moreover, shows a strict compliance with the Code of 1871, §§ 2758, 2759; and, again, § 743 provides as follows: " No challenge to the array shall be sustained *except for fraud*, nor shall any *venire facias* (except a special *venire facias* in a criminal case) be quashed for any cause whatever." I submit that the proper construction of the statute is this: *That none, except a special* venire *in a criminal cause, shall be quashed, and that alone for fraud.* And fraud is not the ground of this motion. See 31 Miss. 350; 43 Miss. 641; 44 Miss. 731–739; 50 Miss. 269.

2. The case is one solely of facts for the jury, and the guilt of the prisoner was sufficiently established by the circumstantial evidence, without the voluntary statement of the prisoner; and when that was introduced by the prosecution, the prisoner was entitled to have the benefit of all that he said in that statement; yet the jury had the right to believe a part of it, and exclude a part, if they believed it to be partly true and partly false. The court gave the proper instructions on the facts of

the case, and the jury, doubtless, took into consideration the whole statement made by the accused.

SIMRALL, C. J., delivered the opinion of the court.

The objection to the proceedings in the Circuit Court, most urgently presented, is the refusal to quash the special *venire facias.* The motion assigns as reason, " because the writ has not been executed according to law and the order of the court." The sheriff made return to the effect that he had summoned thirty-two of the sixty persons named in the writ, and as to the others, that they " were not found in (his) my county." The precise objection developed in the argument of counsel is that the sheriff culpably failed to do his duty in not summoning more than thirty-two out of the sixty persons, and that the accused was prejudiced by a compulsion to select his jury out of so small a number, when his right extended to the whole body named in the writ.

The direction of the law is, that the provisions of the Code, and all other laws of the State not otherwise providing, having relation to the " mode of selecting, drawing, summoning and empanelling all juries, are hereby declared to be directory merely, and such juries, selected, drawn, summoned or empanelled, though in an informal or irregular mode, shall be deemed legal after they have been empanelled and sworn," &c. Code 1871, § 2843. Large discretion is confided to the court in superintending the selection of a jury, nor will its rulings be interfered with, unless there has been a gross and injurious exercise of discretion. *Head's Case,* 44 Miss. 731, 750; *Gilliam* v. *Brown,* 43 Miss. 641.

The question then arises, Is there any rule of law which required the court to quash the *venire?* The return of a sheriff is *prima facie* true. The doctrine of the common law is, that it is conclusively so in the particular case. It may be amended by the officer, if informal or incorrect, if the application so to do is made in due time. There has been for a long time, and is still, a provision in our statutes correcting the rigor of the common law. " The officer . . . shall not be permitted to question the truth of his return, but either of the parties to the action may in the same action show the return to be

untrue." Code, § 707. The section applies primarily to civil, but the reason is urgent that the same privilege should be allowed in criminal, prosecutions.

The motion to quash in this case was not accompanied by any evidence in its support. The accused did not offer to prove the return of the sheriff to be untrue, and in the absence of a suggestion, and proof that it was false, the court must have acted on the assumption that it was true. The probability is that not so many as twenty-eight persons out of sixty, whose names were drawn from the jury-box, were dead, removed, or absent from the county, and it might have been easy to show that they were not summoned because they were not diligently sought for by the officer. We think it was incumbent, however, on the accused to have made the proof; and the court was not obliged by any rule of law to go. outside of the return, and base its ruling on possibilities or probabilities.

Whilst the object of including so many names in the special *venire* was to give full opportunity to the defendant to select an impartial jury, it would hardly ever occur that all would be found. It would be exceedingly difficult to say when the failure to summon would be reason for quashing. The trouble is, when is the point reached that the court will interpose thus peremptorily? We do not say that the power does not exist. It does; and ought to be exercised in proper cases.

Enough does not appear, in this record, to show an abuse of judicial power and discretion to the injury of the accused. No difficulty was encountered in the selection of the jury; at least no complaint of that sort is made in the bill of exceptions; no effort was made to show that the officer had not in good faith obeyed the writ.

The only question that can be contested on the evidence is whether Logan, the accused, was provoked to take the life of the deceased, Young, by finding him in the act of carnal intercourse with his wife. The attention of the jury was specially directed to that inquiry by an instruction given for the defendant. They were told, in substance, that if Logan found Young in the act of adultery with his wife, and under the impulse of the moment took his life, such killing

could not be regarded as murder, &c. The jury in their verdict responded to that inquiry, that the shooting was not done in the circumstances recited in the instruction. The testimony on that subject is the voluntary statement made by Logan before the justice of the peace, who made the preliminary investigation put in evidence by the State, to the effect that he heard the voice of his wife. The language is : " Heard her talking at the gate. . . . I went on up to the gate ; they [that is, Young and his wife] were doing adultery at the gate inside the fence ; he [Young] jumped up and run. . . . I threw a brick at him, and while he was running shot at him," &c.

Witnesses for the State testified that it was a starlight night. One witness, shortly before the shooting, saw Logan, sitting at the root of a tree inside the enclosure, with a pile of something in front of him like brick-bats. He was dressed in white clothing, white pants and a brown linen coat. Another witness says, that he was standing on a bridge thirty or forty yards distant from the gate, where Logan's wife and Young were talking ; she was on the inside and he on the outside, and that no carnal intimacy took place.

There was also testimony proving that, on account of infidelity imputed by the husband to the wife, they had once separated. It is abundantly proved that Logan was exasperated at Young because of his intimacy with his wife. It was abundantly proved that illicit intercourse had continued for some time. The question of whether the killing was provoked by a surprise of the parties in the act, or whether it was the result of a " premeditated design," was fairly and fully presented to the jury by the instructions.

In reviewing the judgment of the inferior court, we can look no further than to see whether their verdict is supported by competent and sufficient evidence. The concurrence of the circuit judge (who heard the evidence) in the propriety of the verdict is a fact to be considered by this court.

*Judgment affirmed.*