441 So.2d 1348 (1983)
Bertha Faye THORNTON
v.
A.D. (Dan) BRELAND, Jr., et al.
Misc. No. 1639.
Supreme Court of Mississippi.
December 12, 1983.
S.E. Allen, Jr., Hazlehurst, Richard E. Stratton, III, Brookhaven, for appellant.
Julius Lotterhos, Jr., James W. Henley, Henley, Lotterhos & Henley, James W. Kitchens, Kitchens & Pickard, Hazlehurst, Heber A. Ladner, Jr., Stephen P. Kruger, Upshaw & Ladner, Jackson, for appellees.
EN BANC.
ROBERTSON, Justice, for the Court:

I.
What is at issue here is not whether we are going to enforce vigorously the Disciplinary Rules in our Code of Professional Responsibility, but how and when. In our view it is ordinarily inappropriate for this Court, or any other court of this state for that matter, to restrain or enjoin in advance threatened or anticipated violations of our Disciplinary Rules.

*1349 II.
Let us be clear about several things. We have no doubt of our inherent and exclusive jurisdiction in bar disciplinary matters. See Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983). We have full authority to do that which we have been asked to do. Nor do we have patience with the idea that petitioners have invoked the wrong "form of action" by seeking here a writ of prohibition instead of some remedy. We ought adjudicate matters presented to us according to the substance of the charge and the justice of the cause, not the label attached to the pleading. In any event, we have elasticized the ancient writ of prohibition so that it is more than sufficient unto this day. State v. Maples, 402 So.2d 350 (Miss. 1981).
These things said, we are of the opinion we should in this case decline the exercise of the authority we undoubtedly possess. We therefore concur in the denial of the application for a writ of prohibition without prejudice to the merits of the issues tendered. We set forth briefly the reasons for our actions.

III.
Preliminarily, we are concerned with the adequacy of the hearing given Kitchens. We view this aspect of the case against the backdrop of the well-established proposition that in bar disciplinary matters the accused attorney has been vested with important due process rights. See, e.g., Netterville v. Mississippi State Bar, 397 So.2d 878, 883 (Miss. 1981). Due process demands reasonable advance notice and full opportunity to be heard.
The present application has been presented to us on short notice and without an adequate record. In our view the complaints procedure authorized by law, Miss. Code Ann. §§ 73-3-301 et seq. (Supp. 1983), make possible a far more adequate hearing than has been given Kitchens to date. This statutory complaints procedure has been ordained for the precise purpose of vindicating and protecting the public interests identified by Justice Bowling in his dissenting opinion. The employment of that procedure would, in our opinion, more effectively serve the competing legitimate interests here at stake than would the writ of prohibition sought this day.

IV.
Our principal concerns are the client and the office of the attorney as a hopefully fearless advocate for the client. In this case, if on the eve of trial we hold that attorney Kitchens may not proceed further, we inevitably punish the client as well as the offending attorney. That Kitchens may be in the process of violating Canon 9 is not a sin that ought be visited upon his client.
Beyond that, we cannot support a procedure that would, absent the most egregious facts, sanction prior restraints upon the professional activities of attorneys. We predicate this conclusion upon a romantic view of the ideals of our adversary system as well as a realistic appraisal of the darker side of the lawyering process. That latter first.

A.
A lawsuit, civil or criminal, is often a small war. We may wish it weren't and hope that it may some day cease to be so. Still, we put our heads in the sands if we ignore this reality. The stakes are often high, and even when they aren't litigants are often guilty of (if not consumed by) the sin of pride. Lawsuits engender tensions, emotions, and partisanship like no other experience in life. Civility is often a thin veneer covering limited altruism.
The system we exalt encourages, indeed demands, more than warm zeal on behalf of one's client. A lawyer is charged with the responsibility of seeking every fair advantage honorably available to his client. In the heat of battle, not surprisingly, lawyers from time to time are less than objective in their judgment what advantages are fair and honorably available. We have seen litigation where the primary strategem employed by one side or the other was to "destroy" counsel opposite. The lawyer is put on trial instead of the client.
*1350 If we granted this writ, we would in effect announce to the bar the availability of a new and potentially destructive tactical opportunity. In tough litigation where the stakes are high, lawyers would seek ways to disqualify counsel opposite, particularly competent counsel opposite. The granting of this writ would encourage sharp practices on the part of the bar. The legitimate interests of clients would necessarily suffer. Indeed, if we had granted this writ, it would surely have followed as the night the day that other such efforts to remove counsel opposite from the case would be made, not to vindicate the lofty aims of our Canons of Ethics but as a strategem designed to cripple one's opposing litigant.

B.
There is another point of view. It is the essence of our adversary system that each litigant have the assistance of a lawyer who is prepared, if it be appropriate, to defy hell on his or her client's behalf.
To many, the lawyer is a mere extension of the will of the client. The client wishes to pursue certain ends but is without technical, legal skills. The lawyer provides those skills. He is in a sense a conduit through which the client pursues his ends. The lawyer at once is both highly partisan and completely neutral. He aggressively pursues the ends of his client, yet he remains personally indifferent to those ends.
A lawyer is and must be the ultimate advocate. He speaks for and in the interest of his client. He seizes every fair advantage available to his client. And when his client is on the ropes, the lawyer, standing alone if need be, is that one person who, in the interest of his client, skillfully defies the state, the opposing litigant, or whoever threatens. The lawyer is prepared to stand against the forces of hell though others see that as his client's just dessert. He assures all adversaries, in the vernacular of the streets, "You may get my client but you're got to come through me first."
If the lawyer is to perform these vital functions, he must be unfettered, he must in the course of his advocacy be indulged freedom from prior restraints, even when he skates close to the edge.
We recognize without hesitation that society expects, indeed, demands a quid pro quo from the lawyer who has been given this freedom to roam as a hired gun. See my article, The Lawyer As Hero, 53 Miss. 431, 437-441 (1983). And, though the ultimate and primary source of discipline of attorneys is, and always will be, self-discipline, Levi v. Mississippi State Bar, 436 So.2d 781, 789 (Miss. 1983), the state has established a mechanism (albeit imperfect) for exacting that quid pro quo from lawyers who stray. Miss. Code Ann. §§ 73-3-301, et seq. (Supp. 1982). This mechanism establishes a regimen of discipline and sanctions post-offense, appropriately eschewing prior restraints.
Whether viewed from the vantage point of the lawyer or the clients, rights of free speech are implicated here. U.S. Const.Amdt. I; Miss. Const., Art. 3, § 13 (1890). The lawyer's right and responsibility of zealous advocacy is and ought be protected speech. Cf. NAACP v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405; In Re Primus, 436 U.S. 412, 98 S.Ct. 1893, 56 L.Ed.2d 417. Certainly the client's right to the assistance of counsel is protected.
It is established constitutional law that prior restraints on speech are not tolerated absent the clearest imminent danger. Near v. Minnesota, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Prior restraints on expression bear a heavy presumption against their legality. The party seeking such restraint bears the heaviest burden of justification. See, New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822, 824-25 (1971).
To our minds the free speech analogy is wholly appropriate. We regard the lawyer's right and responsibility of zealous advocacy on behalf of his client among the most precious forms of speech. As such we would pretermit advance enforcement of the canons of ethics and place our faith in the integrity of most of our lawyers and in the effectiveness of our quasi-criminal complaints *1351 procedures. See Miss. Code Ann. §§ 73-3-301, et seq. (Supp. 1982); and Levi v. Mississippi State Bar, 436 So.2d 781 (Miss. 1983). Plagiarizing Judge Learned Hand, to many this is and always will be folly; but upon it we have staked our all. United States v. Associated Press, 52 F. Supp. 362, 372 (S.D.N.Y. 1943).
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE and PRATHER, JJ., join in this opinion.
BOWLING, Justice, dissenting:
In my humble opinion this Court is obligated to sustain the Petition for Writ of Prohibition to prevent Attorney James Kitchens from participating in the trial or future actions of this case.
I hasten to say that no one to my knowledge has accused Attorney Kitchens of any fraud, and any subject touching on such a question is not involved here.
We have before us simply the question of whether or not this Court has the duty to prevent what I think is a clear violation of the Mississippi State Bar's Canons of Ethics. We read continuously the criticisms of people about the legal profession. I do not share the vast majority of those views. I am concerned, however, that the action we are today taking shall fuel the opinions of those who wish to degrade our noble profession.
To me, there can be no dispute but that the applicable canon prohibition applies. Canon 9 is headed "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." Under that canon, ethical consideration 9-3 reads in clear and unmistakeable language as follows:
After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.
No pronouncement regarding the duty of a member of the bar could be more clear than the above quote. In my humble opinion, there can be no dispute but that Mr. Kitchens is violating this canon by accepting employment in the present case. He was the district attorney when Mrs. McKay was murdered in the defendant hospital. There is no dispute but that in his official capacity he, to say the least, had a "substantial responsibility" in solving the murder and bringing those responsible before the bar of justice.
This Court is the highest court of the state and by statute, Constitution and mandate of this Court we have the inherent disciplinary jurisdiction. We have the final decision to make as to whether or not a member of the bar has performed acts forbidden by the canons of ethics. We have been requested not to shirk our duty, but to enforce the ethical canon so that the members of the public may see that we are doing all we can to uphold the professional responsibility of attorneys charged with unethical conduct.
As a member of the highest court, I cannot be a party to give any impression that Canon 9-3 has not been violated by Attorney Kitchens.
I have read the specially concurring opinion of Justice Robertson. My reaction to all that is said there is that in spite of the obvious brilliance of its rhetoric, he never mentions the hereinbefore obvious situation that Mr. Kitchens undisputedly is violating the Canons of Ethics of the lawyers of this state. The highest court of this state has been called on to establish some sort of precedent to protect the members of the bar from undue criticism.
HAWKINS and DAN M. LEE, JJ., join in this dissent.