# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-01840-SCT

*KENNETH R. BORRIES*

*v.*

*MALCOLM MURPHY a/k/a A. MALCOLM MURPHY*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/18/2019 |
| TRIAL JUDGE: | HON. MICHAEL H. WARD |
| TRIAL COURT ATTORNEYS: | ROBERT PAYNE SHEPARD |
| | VINCENT J. CASTIGLIOLA, JR. |
| COURT FROM WHICH APPEALED: | GEORGE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | VINCENT J. CASTIGLIOLA, JR. |
| ATTORNEY FOR APPELLEE: | ROBERT PAYNE SHEPARD |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 06/03/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Malcolm Murphy, an attorney, requested that his client, Kenneth R. Borries, sign three promissory notes for legal services rendered. After Borries failed to pay the notes, Murphy filed suit. Borries now appeals from the trial court's grant of summary judgment in favor of Murphy. Because Borries did not deny voluntarily signing the promissory notes and because the notes contained clear and unambiguous terms, we affirm the trial court's grant of summary judgment in favor of Murphy.

## FACTS AND PROCEDURAL HISTORY

¶2.     Murphy is a licensed Mississippi attorney with a practice in Lucedale. Beginning in 2004, Borries hired Murphy to represent him in a number of legal matters. Murphy continued to perform legal work for Borries for approximately nine years. Between March 21, 2005, and June 9, 2011, Borries wrote Murphy twelve checks totaling $58,620. Borries additionally asserts that he paid Murphy $2,500 in cash during that time period.[1]

¶3.     On September 11, 2012, Murphy requested that Borries sign a promissory note for services rendered. Borries signed the note in the principal amount of $30,000, with an interest rate of 4 percent per annum from maturity on the balance of the unpaid principal. The principal and interest were due in twelve months. The note additionally contained a provision stating, "[i]n the event of such default, if the note is placed in the hand of any attorney for collection, an additional amount of 10% shall be added to the remaining unpaid principal as attorney's fees." The bottom of the note stated in handwriting, "balance due on Aiden/Cecilia case."

¶4.     On October 1, 2013, Borries signed a second promissory note in the amount of $2,500, with a 5 percent interest rate per annum. The second note stated, "[i]n the event of default, if this note is placed in the hands of an attorney for collection, a[n] additional amount of 40% shall be added to the remaining unpaid principal as attorney's fees." The note stated that it was for "value received, (BAY SOUTH)." That same day, Borries signed a third promissory note, also for $2,500, for "value received, (DAVID ROW)" with the same 5 percent interest rate per annum and the same 40 percent provision were the note placed in the hands of an

---

[1]Murphy disputes that assertion.

attorney.

¶5. Murphy asserted that he requested that Borries sign the promissory notes because Borries had been short on cash and needed the credit. He alleged that the notes were for "time spent, professional services rendered and expenses incurred." Murphy stated that the promissory notes represented the balance due on the Aiden/Cecilia matters and two other pending suits (Bay South & David) as noted on the notes. The Aiden/Cecilia matters encompassed three causes of action: (1) *Kenny Borries v. Cecilia Eubanks Borries*, No. 1999-3258RP (Jackson Cnty. Ch. Ct.); (2) *Allstate Indemnity Company v. Estate of Dane Richard Eubanks and Cecilia Eubanks*, No. 407.1:08cv1464 (S.D. Miss); and (3) *Kenny Borries v. Cecilia Eubanks*, No. 2010-00009 (Jackson Cnty. Cir. Ct). The Bay South promissory note was for services rendered for litigation in the matter of *Kenneth R. Borries v. Bay South Limited, Inc.*, No. A2401-13-154 (Harrison Cnty. Cir. Ct.). Lastly, the David promissory note was for attorney's fees in connection with *Kenneth R. Borries v. Monte Joel David, et al.*, No. 2012-0293 (George Cnty. Ch. Ct.).

¶6. Borries failed to make payments on the promissory notes. On February 24, 2015, Murphy filed a complaint against Borries, seeking judgment on all three notes. In response, Borries filed an answer, counterclaim, and request for declaratory judgment. He asked the trial court to dismiss Murphy's complaint and to determine the amount of reasonable attorney's fees owed based on time spent.

¶7. Borries did not deny voluntarily signing the three promissory notes but asserted that the notes "should be considered documentation of agreed retainers for legal fees to be

3

determined and charged based upon attorney time billed at a reasonable hourly rate." Borries claimed that the notes did not represent the actual amount owed. Instead, he argued that Murphy had represented that he would calculate the attorney's fees owed and that Borries would be obligated to pay that fee less any payments already made by Borries. Borries stated that he had been waiting for an accounting of legal fees and payments previously made and that Murphy had not provided Borries with any detailed or itemized bills indicating his time spent.

¶8.     In Murphy's responses to requests for production and interrogatories, he stated that only one formal contract had existed between the two parties for a BP oil-spill claim. Murphy attached a contingent-fee contract that Borries had signed on March 8, 2012, to employ the legal services of Denham Law Firm, PLLC, to represent him in connection with his claim against BP America, Inc., etc. Also attached was a document labeled "Agreement" that stated,

> It is agreed that the undersigned will jointly represent Kenneth R. Borries, individually and as d/b/a Tucies [sic] Fishing Camp, regarding all losses sustained as a result of the BP Oil spill, the responsible parties being identified in a Contingent Fee Contract signed by Kenneth R. Borries dated March 8, 2012.

The agreement provided that the attorneys' fees should be equally divided between Denham Law Firm and Murphy.[2]

¶9.     Also in response to discovery requests, Murphy provided an itemized time sheet for the three matters encompassing the Aiden/Cecilia promissory note. The total time spent on

_____

[2]Murphy asserted that Borries later terminated his and Denham's representation on that case.

the ***Kenny Borries v. Cecilia Borries*** Jackson County Chancery Court case was listed as 226 hours and fifteen minutes. Per the time sheet, the work on the chancery-court matter began on March 10, 2007, and ended on January 20, 2012. On the circuit-court case, ***Kenny Borries v. Cecilia Borries***, Murphy provided a time sheet with the total time spent listed as thirteen hours and thirty minutes. The work on the circuit-court case began on January 12, 2010, and ended on June 14, 2011. The ***Allstate v. Estate of Dane Eubanks*** United States District Court case listed twenty-four total hours spent, from August 27, 2009, to May 6, 2010.

¶10. Additionally, Murphy provided a list of matters for which he had represented Borries, with a total of twenty-five matters listed. The document also contained a list of "missing notes" that showed five items. The document stated that the list was not inclusive and that Murphy could not remember all of the matters he had worked on for Borries because "no files were made on many questions and answers."

¶11. Also produced in discovery was a letter Murphy wrote to Borries dated October 5, 2007, which stated that an itemized statement of time and expenses was enclosed regarding the matter of ***Deborah Smith Gibson v. Kenneth R. Borries***.[3] The letter read that the "statement, less $3,000.00 advance, amounts to $19,368.50." The attached statement showed a bill for 147.25 hours at a rate of $150 per hour for a total of $22,087.50. The time spent on the ***Gibson*** matter started on September 4, 2004, and ended on October 4, 2007. This was the only invoice Murphy prepared throughout the parties' attorney-client relationship. Borries asserted that the invoice was never sent to him.

---

[3]Murphy alleged that this was the first case he worked on for Borries.

¶12.    On August 23, 2017, Murphy filed a motion for summary judgment and argued that, because Borries admitted signing the promissory notes and admittedly had not paid the notes, no genuine issue of material fact remained, and Murphy was entitled to judgment as a matter of law.

¶13.    In opposition, Borries submitted an affidavit stating that,

> Based on what Malcolm told me as my lawyer, this note was not a promissory note like the papers you sign when you borrow money from the bank. Malcolm was my lawyer and a friend, he said he just needed something signed by me for his records, I didn't question him and believed him when he said the amount of the note was the correct amount of his fees and I signed the papers he asked. He said I would only be expected to pay the amount owed for attorney fees after deducting the payments I had already made. I would not have signed the papers if I had known the amount of the notes was different from what he had agreed to charge or that he would not give me credit for payments made.

Borries also argued that Murphy had calculated his fee at $250 per hour but that the parties had agreed to $150 per hour.

¶14.    Additionally, Borries submitted the affidavit of H. Benjamin Mullen, an attorney licensed in Mississippi and Alabama. Mullen stated that he had reviewed the list of time provided by Murphy as well as the other documents produced in discovery. Mullen drafted a document titled "Murphy Time with HBM Adjustments" that showed a list of hours Murphy had submitted on each case and the adjusted hours Mullen thought Murphy should have charged. While Murphy claimed 263.75 hours of work, Mullen submitted that 199.7 hours was the maximum that should have been charged. Mullen additionally stated that a reasonable hourly rate for the work performed would be $150 per hour. He noted that in October 2007, Murphy had prepared a detailed invoice covering three years' legal work at

$150 per hour. He wrote that the "timeframe of that invoice overlaps Mr. Murphy's reconstructed invoice which begins March 10, 2007." Murphy asserted that it would be unreasonable for an attorney to increase his fee from $150 to $250 per hour in a short period of time and without the express approval of his client.

¶15. On February 28, 2019, the trial court granted Murphy's motion for summary judgment and awarded Murphy, on the first note, a total judgment of $40,746.62, together with interest at the rate of 4 percent per annum; on the second note, a total of $4,175.42, with a 5 percent per annum interest rate; and $4,175.42 on the third note, with a 5 percent per annum interest rate. The trial court's judgment did not address Borries's counterclaim.

¶16. On May 13, 2019, after the court had granted summary judgment, Borries filed a Motion for Leave to Amend Answer and Counterclaim and for Extension of Discovery Period. Borries argued that he had discovered additional facts in regard to the promissory notes that warranted amendment of his answer and counterclaim. Borries moved for an order extending the discovery period for sixty days and for leave to amend his answer and complaint. In response, Murphy filed a motion to dismiss.

¶17. The trial court found that all four elements of res judicata were present and dismissed Borries's counterclaim. The trial court also found that the allegations raised in the counterclaim had been resolved against Borries through the ruling on the summary-judgment motion.

¶18. Borries appealed and raised three issues:

    I.    Whether the trial court properly granted summary judgment in favor of Murphy.

7

II.     Whether the trial court erred by denying Borries's motion for leave to amend.

III.    Whether the trial court erred by granting Murphy's motion to dismiss based on res judicata.

## ANALYSIS

**I.     Whether the trial court properly granted summary judgment in favor of Murphy.**

¶19.    This Court reviews the grant of summary judgment de novo. ***Venture, Inc. v. Harris***, 307 So. 3d 427, 431 (Miss. 2020). The evidence is viewed "in the light most favorable to the party against whom the motion has been made." ***Id.*** (internal quotation marks omitted) (quoting ***Renner v. Retzer Res., Inc.***, 236 So. 3d 810, 814 (Miss. 2017)). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue [as to] any material fact and that the moving party is entitled to a judgment as a matter of law.'" ***Id.*** at 431-32 (quoting Miss. R. Civ. P. 56(c)).

¶20.    Borries argues that genuine issues of material fact existed that should have precluded summary judgment. First, Borries contends that Murphy had chosen an amount for the promissory notes without respect for the existing fee agreement and/or estimated hours billed. Borries also asserts that compelling evidence existed that the attorney's fee balance claimed to be owed was in excess of the amount owed under the original attorney's fee agreement. Borries next argues that the promissory notes were modifications to the preexisting fee agreement made after the attorney-client relationship had been established.

¶21.    However, Borries has not shown that a genuine issue of material fact related to the

8

promissory notes existed. "A contract between lawyer and client, including a fee contract, should be construed 'as a reasonable person in the circumstances of the client would have construed it.'" ***Tyson v. Moore***, 613 So. 2d 817, 824 (quoting Restatement (Third) of the Law Governing Lawyers § 29A(2) (Am. L. Inst. 1992)). "Under Mississippi law, where the contract is not ambiguous, the intention of the contracting parties should be gleaned solely from the wording of the contract." ***Turner v. Terry***, 799 So. 2d 25, 32 (Miss. 2001) (citing ***Heritage Cablevision v. New Albany Elec. Power Sys.***, 646 So. 2d 1305, 1312 (Miss. 1994)). "[T]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." ***Id.*** (alteration in original) (internal quotation marks omitted) (quoting ***Cherry v. Anthony***, 501 So. 2d 416, 419 (Miss. 1987)).

¶22.    Borries does not deny voluntarily signing the promissory notes. Instead, Borries argues that he had signed the promissory notes with the understanding that "it was just something for Murphy's records" and that Murphy would credit his prior payments against a properly calculated bill for legal services. The faces of the notes belie Borries's contentions. The first promissory note states three times on its face that the amount owed was $30,000. The top left of the note reads, "Principal Amount $30,000.00." The body of the note states, in relevant part,

> For value received, I, We, or either of us, promises to pay unto Malcolm Murphy or Assigns Lucedale, Mississippi or order the principal sum of thirty-thousand & NO/100 ($30,000.00) Dollars bearing interest at the rate of four (4%) per cent per annum from maturity on the balance of the principal remaining from time to time unpaid, the principal and interest being due and payable in 12 months . . . .

The bottom of the note states, "Balance Due on Aiden/Cecilia Case." The second promissory

9

note similarly states in the top left corner, "Principal $2500.00." The body of the note states, "FOR value received, (BAY SOUTH) I promise to pay on demand unto A. Malcolm N. Murphy or assigns the sum of TWO THOUSAND FIVE HUNDRED AND NO/100 Dollars ($2500.00) bearing interest at the rate of 5% per annum, from date." The same language is used in the third promissory note, with the value received listed as "David Row."

¶23.    A party is bound by the plain and unequivocal terms of a contract. ***Alliance Tr. Co. v. Armstrong***, 185 Miss. 148, 186 So. 633, 635 (1939). As this Court has stated,

> It is the duty of every contracting party to learn and know its contents before he signs and delivers it. . . . To permit a party, when sued on a written contract, to admit that he signed it but to deny that it expresses the agreement he made or to allow him to admit that he signed it but did not read it or know its stipulations would absolutely destroy the value of all contracts.

***Id.*** (internal quotation mark omitted) (quoting 12 Am. Jur. *Contracts* § 137). The terms of the promissory notes do not leave the amount due open for interpretation or fluctuation. The only reasonable construction of the first promissory note was that Borries owed a specific amount, $30,000, for the balance on the Aiden/Cecilia case. The second and third notes also are not ambiguous as to the amounts due on the notes. In fact, the definition of "promissory note" is "an unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person." *Promissory Note*, Black's Law Dictionary (21st ed. 2020). Accordingly, the trial court did not err by granting summary judgment by favor of Murphy.

¶24.    Borries's counterarguments center on his attorney-client relationship with Murphy. It is true that an attorney owes his client a duty of care, a duty of loyalty, and duties provided

10

by contract. ***Singleton v. Stegall***, 580 So. 2d 1242, 1244 (Miss. 1991). The duty of loyalty is a fiduciary duty. ***Id.*** at 1245. This Court previously has stated that "[t]he relation of attorney and client is one of special trust and confidence. The law requires that all dealings between them shall be characterized by the utmost fairness and good faith on the part of the attorney." ***Gwin v. Fountain***, 159 Miss. 619, 126 So. 18, 22 (1930).

¶25.   An attorney has a duty to deal with his client "in a manner of 'utmost honesty, good faith, fairness, integrity, and fidelity. . . .'" ***Tyson***, 613 So. 2d at 823 (quoting 7A C.J.S. *Attorney & Client* § 234 (1980)). If an attorney has taken undue advantage of a client, the transaction is voidable. ***Id.*** The client must make a proper showing of undue advantage to be relieved of the burden of the transaction. ***Id.*** Upon a proper showing, the transaction becomes "presumptively fraudulent." ***Id.*** (internal quotation marks omitted) (quoting ***Gwin***, 126 So. at 22). The attorney may rebut the presumption by showing: "(1) the transaction's fairness, (2) the client's voluntary entry into the transaction, and (3) the client's full, independent understanding of the nature of the transactions and his or her rights." ***Id.*** at 823-24 (citing ***Lowrey v. In re Will of Smith***, 543 So. 2d 1155, 1161-62 (Miss. 1989)).

¶26.   Borries cites ***Spilker v. Hankin***, 188 F.2d 35 (D.C. Cir. 1951), in which the United States Court of Appeals for the District of Columbia Circuit discussed fee contracts between an attorney and client. The court of appeals stated that

> Fee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts. Especially this is true where, as in this case, a contract beneficial to the attorney is executed long after the attorney-client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination. . . . They are always subject

11

to the close scrutiny of the court whenever judicial enforcement is sought.

*Id.* at 39. However, in *Spilker*, the client hired an attorney to represent her in a divorce action and property settlement. *Id.* at 36. During the representation and after much work had been done, the attorney requested that his client sign seven promissory notes. *Id.* The client alleged that her attorney "refused to proceed in said divorce action involving a property settlement, unless the [client] would execute the note, which is the basis of [attorney's] suit, that the [client] acting under duress and in fear of losing her divorce action and property, was unlawfully coerced into executing the said note." *Id.* The client signed the notes but failed to pay. *Id.* The attorney brought suit on one of the notes and won. *Id***.** He then attempted to collect on the second note and argued the doctrine of res judicata. *Id.* at 37. The court of appeals noted the fiduciary relationship of attorney and client and held that, because the attorney was attempting to collect on a series of notes, because the original suit was for a much smaller amount, and because it had been tried without a jury, the doctrine of res judicata did not apply. *Id.* at 39-40.

¶27.    Borries additionally cites *Yonge v. Hooper*, in which the Supreme Court of Alabama stated, "[w]hen a conveyance is made by the beneficiary to the trustee, or a judgment confessed by the former to the latter, in the absence of explanation the intendment is, that the conveyance or judgment was obtained by undue influence, and the burden rests on the trustee to repel such imputation." *Yonge v. Hooper*, 73 Ala. 119, 121 (1882) (citing *Thompson v. Lee*, 31 Ala. 292 (1857)). In that case, two attorneys, while representing the client, had requested that the client sign two promissory notes that were secured by the mortgage on her

house. *Id.* The Alabama court found that

> According to the averments of the bill, the answer of the defendants and the consent for decree were drawn by the defendants, while the relation of attorney and client existed between them, and at a time when they were engaged in active professional duties in defending Mrs. Yonge's property. If this be so, then the law will not sanction such transaction beyond a fair and reasonable compensation for the services rendered by them for her.

*Id.* at 122.

¶28. This case can be distinguished. Murphy brought suit on all three promissory notes. There was also no contention that Murphy had stated the promissory notes were to be signed or he would not proceed on the actions. Borries did not allege any coercion by Murphy. Further, Murphy stated that his work on the cases involving the promissory notes had been completed when he requested that Borries sign the notes.

¶29. Mississippi Rule of Professional Conduct 1.5 provides that "[a] lawyer's fee shall be reasonable." M.R.P.C. 1.5(a). If Borries contends that Murphy's fee on the three cases was unreasonable and that the promissory notes were procured through misrepresentation, those issues are better resolved through a complaint with the Mississippi Bar Association. "Failure to comply with an obligation or prohibition imposed by [the Rules of Professional Conduct] is a basis for invoking the disciplinary process. . . . Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached." M.R.P.C. Scope; *see also* **Thornton v. Breland**, 441 So. 2d 1348, 1350-51 (Miss. 1983) ("As such we would pretermit advance enforcement of the canons of ethics and place our faith in the integrity of most of our lawyers and in the effectiveness of our quasi-criminal complaints procedures."); **Hatfield v. Deer Haven Homeowners Assoc., Inc.**, 234 So. 3d 1269, 1272

13

(Miss. 2017).

¶30. Moreover, it is clear that Murphy performed a wide variety of legal work for Borries. Although Borries claims that he had already paid $58,620 in legal fees to Murphy, Murphy's records indicate that he began working for Borries in September 4, 2004. The work for the twenty-five legal matters listed by Murphy ended in June 2013. Borries's last check to Murphy was June 9, 2011, more than a year before Murphy requested that Borries sign the first promissory note. Therefore, the money paid to Murphy was over a seven-year period and ended more than a year before the first promissory note was signed. Borries also states that, over the course of approximately nine years of representation, Murphy prepared a single invoice reflecting 147.25 hours, plus fees, for a total of $22,087.50. That invoice was for a single case, ***Deborah Gibson v. Borries***. The invoice was dated October 5, 2007; therefore, out of the $58,620 in legal fees that Borries had paid Murphy, $22,087.50 was for work on a single matter in 2007. Murphy's failure to provide Borries with invoices throughout the attorney-client relationship of the parties did not create a genuine issue of material fact as to the promissory notes.

¶31. Borries additionally contends that a genuine issue of material fact exists regarding whether the agreed rate of attorney's fees between the parties was $150 or $250 per hour. Borries argues that the invoice for the Deborah Gibson matter listed time spent as 147.25 hours at a rate of $150.00 per hour. However, in Murphy's response to interrogatories, he stated that "Mr. Borries and myself had an agreement, verbal, that he would pay me for my time and expenses at the rate of $250.00 per hour." Yet this argument does not create a

14

genuine issue of material fact as to the promissory notes.

¶32.   Murphy filed suit to recover on three promissory notes that Borries voluntarily signed. The terms of the promissory notes were clear and unambiguous. This Court cannot go behind the promissory notes to determine reasonableness. Should Borries choose to proceed on his allegations of reasonableness and misrepresentation, the appropriate remedy is through a bar complaint with the Mississippi Bar Association. Therefore, no genuine issues of material fact remained, and the trial court correctly granted summary judgment in favor of Murphy.

**II.      Whether the trial court erred by denying Borries's motion for leave to amend.**

¶33.   Borries next argues that the trial court erred by denying his motion for leave to amend his counterclaim because of newly discovered information obtained in discovery. The trial court found that the allegations raised in the counterclaim had all been resolved against Borries in the ruling on the summary-judgment motion.

¶34.   "Motions for leave to amend [the] complaint are left to the sound discretion of [the] trial court; the Supreme Court reviews such determinations under an abuse of discretion standard; and, unless convinced that [the] trial judge abused [his/her] discretion, the Supreme Court is without authority to reverse." *Webb v. Braswell*, 930 So. 2d 387, 392 (Miss. 2006) (alterations in original) (quoting *Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So. 2d 574, 579 (Miss. 1998), *overruled on other grounds by Upchurch Plumbing, Inc. v. Greenwood Utilities Comm'n*, 964 So. 2d 1100 (Miss. 2007)).

¶35.   Borries filed his original counterclaim on May 22, 2015. After the parties conducted discovery and after the trial court granted summary judgment in favor of Murphy, Borries

15

filed a motion to amend his counterclaim. Borries argued that the information discovered provided evidence of a more compelling case than initially pled. For example, Borries's original counterclaim stated that Borries had paid Murphy a total of $20,000 prior to signing the promissory notes. However, discovery revealed that Borries had actually paid a total of $58,620. Additionally, Borries contended that the information discovered showed that the parties had agreed that Murphy would represent Borries at an hourly rate of $150.

¶36.    The trial court correctly found that the allegations raised in Borries's counterclaim had been resolved in the ruling on the summary-judgment motion. Mississippi Rule of Civil Procedure 15(a) provides, in relevant part, that "a party may amend a pleading only by leave of court or upon written consent of the adverse party; leave shall be freely given when justice so requires." M.R.C.P. 15(a). However, Borries's counterclaim, even if amended, attacks the promissory notes. The amended counterclaim would not add any genuine issues of material fact to the question of whether Borries owed on the promissory notes. A motion for leave to amend should be granted "[i]f the underlying facts or circumstances relied upon by the [party] may be a proper subject of relief . . . ." *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 800 (Miss. 1994) (quoting *Red Enters., Inc. v. Peashooter, Inc.*, 455 So. 2d 793, 795 (Miss. 1984), *abrogated on other grounds by Hutzel v. City of Jackson*, 33 So. 3d 1116, 1122 (Miss. 2010)). Because amending the counterclaim would be futile after the trial court granted summary judgment on the promissory notes, justice does not require that Borries be given the opportunity to amend his counterclaim.[4]

---

[4]Additionally, Borries's counterclaim stated that he would compensate Murphy for legal services based on "time spent at a reasonable hourly rate." Although Borries argues

**IV. Whether the trial court erred by granting Murphy's motion to dismiss Borries's counterclaim.**

¶37. In granting Murphy's motion to dismiss Borries's counterclaim, the trial court found that all four elements of res judicata were present and that the allegations raised in the counterclaim had been resolved in the ruling on summary judgment. We agree that the allegations raised in the counterclaim had been resolved in the ruling on summary judgment.

¶38. Borries argues that the trial court failed to address the issues contained in the counterclaim. Borries claims that Murphy's lawsuit dealt solely with seeking judgment on the promissory notes and that his counterclaim against Murphy dealt with related, but different issues, such as recovery of overpayments that Borries made as a result of Murphy's breach of his fiduciary duties owed to his client and other damages.

¶39. Borries signed the promissory notes as payment for services rendered on three cases. Borries's counterclaim states that "Borries requests judgment be granted by way of counter claim from and against Murphy in an amount to be determined by the finder of fact which will result in a judgment that reflects the reasonable attorneys fees earned by Murphy less the amount previously paid by Borries to Murphy." Therefore, Borries's counterclaim directly involves the promissory notes. Borries's argument was as follows:

> That case dealt solely with the validity of the three promissory notes which as Murphy emphatically and effectively urged were unambiguous and that evidence submitted by Borries was parole evidence which could not be utilized to attack their validity. While Borries urged the substantial discrepancy between the amount of money Borries had already paid, the limited hours documented by Murphy, and the $100 hourly rate differential, absent is any

that the parties had agreed to $150 per hour for legal services, Borries apparently did not discover this until after the lawsuit had been filed and discovery had been conducted.

17

evidence that the Trial Court's grant of Murphy's Summary Judgment provided a hearing on the facts of Borries Counterclaim.

An attempt to determine the reasonableness of the attorney's fees earned by Murphy would require this Court look behind the promissory notes to parole evidence. As this Court has stated,

> The rule that evidence of prior oral agreements is not admissible to contradict, alter, vary, or change the terms of a subsequent written contract which is plain, unambiguous, and complete on its face, is too well settled to require the citation of authority; and it is equally well settled that the legal effect of a written instrument cannot be contradicted, altered, or changed by parole evidence of prior agreements.

*Thompson v. Hill*, 147 Miss. 489, 112 So. 697, 699 (1927) (citing *Campe v. Renandine*, 61 Miss. 441, 1 So. 498 (1887)).

¶40.   Because the promissory notes were voluntarily signed and contained clear and unambiguous terms, the notes must be enforced on their terms. Accordingly, the trial court correctly found that Borries's counterclaim was rendered moot by its grant of summary judgment in favor of Murphy.

## CONCLUSION

¶41.   Because Borries voluntarily signed the three promissory notes and because the notes contained clear and unambiguous terms, the trial court correctly granted summary judgment in favor of Murphy. We find no merit in the remaining issues raised by Borries.

¶42.   **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR.   GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

18

**GRIFFIS, JUSTICE, DISSENTING:**

¶43. I respectfully disagree with the majority. I find that there are genuine issues of material fact in dispute and that summary judgment is not appropriate. M.R.C.P. 56(c). I would reverse and remand for further proceedings.

¶44. Murphy's complaint seeks to collect on three promissory notes. It suggests that this case is a simple collection lawsuit. The complaint does not reveal that the promissory notes were related to the longstanding attorney-client relationship between Murphy and Borries.

¶45. The complaint asserts no facts about the execution of, reason for, or the consideration for the promissory notes. These are important to the enforcement of the promissory notes. Instead, the complaint frames this lawsuit as simply a debtor and creditor transaction and collection effort. It is not.

¶46. The law provides that there is no fiduciary relationship that arises from a relationship of a debtor and creditor. This Court has ruled that "ordinarily a bank does not owe a fiduciary duty to its debtors and obligors under the UCC." *Burgess v. Bankplus*, 830 So. 2d 1223, 1227 (Miss. 2002) (internal quotation marks omitted) (quoting *Peoples Bank & Tr. Co. v. Cermack*, 658 So. 2d 1352, 1358 (Miss. 1995), *overruled on other grounds by Adams v. U.S. Homecrafters Inc.*, 744 So. 2d 736 (Miss. 1999)). "An arms length business transaction involving a normal debtor-creditor relationship does not establish a fiduciary relationship." *Id.* at 1228 (citing *Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So. 2d 812, 816 (Miss. 1996)). Based on the complaint, there is no reason to view the relationship between the parties as anything other than a debtor and creditor relationship, and

19

there is no reason to consider the effect of a fiduciary relationship.

¶47.    But Borries's answer, counterclaim, response to the motion for summary judgment, and the affidavits submitted in opposition to the motion for summary judgment clearly indicate that this is not a debtor-creditor collection case.  Instead, this case centers on the attorney-client relationship between Murphy and Borries, and the Court must consider the effect of the alleged breach of fiduciary duty that resulted from the attorney-client relationship.

¶48.    According to Borries, an attorney-client relationship with Murphy began around September 2004 and lasted until October 1, 2013.[5]  In his affidavit, Borries asserts the following:

> Based on what M[urphy] told me as my lawyer, this [promissory] note was not a promissory note like the papers you sign when you borrow money from the bank.  M[urphy] was my lawyer and a friend, he said he just needed something signed by me for his records, I didn't question him and believed him when he said that amount of the note was the correct amount of his fees and I signed the papers he asked.  He said I would only be expected to pay the amount owed for attorney fees after deducting the payments I had already made.
>
> . . . .
>
> I did not pay [the promissory notes] because M[urphy] never did what he said he was going to do as a condition of me signing the note.  M[urphy] told me he was going to deduct from the amount I owed the payments I had made. . . . I'd made a lot of payments to him before then and he said he would give me credit for what I'd already paid.  He did not give me any kind of accounting until after the lawsuit.
>
> Between the time I signed the notes and the time he sued me, M[urphy] never gave me a bill or any kind of itemization or accounting of the lawyer time he

---

[5] Borries asserts that the relationship "soured" after Borries decided to move his BP case to another attorney.

20

spent or the money I paid him. Other than a contingent fee agreement [regarding the BP claim], the only charge he ever gave me before doing work was $150 per hour plus expenses. When I signed the note, I relied on what M[urphy] told me was true.

. . . .

The $250 hourly rate[] . . . is not correct, M[urphy] told me he was going to charge me $150 per hour. . . .

My notes and recollections, conversations with my son and M[urphy]'s invoice dated October 5, 2007 confirm that M[urphy] agreed to charge me $150 an hour for the work he did for me. Other than the BP claim, M[urphy] never mentioned and I never agreed to any different basis for charges for his legal work.

. . . .

Before I signed the note in September 2012 I had already paid M[urphy] a total of $61,120. When I signed the note September 11, 2012[,] [Murphy] told me that $30,000 was the amount I owed him for attorney fees and that he would give me credit for the payments that I had made. I took his word for all [of] this, he did not show me any documents or go over any details with me. He assured me that this was just for his records. If I had known that the amount of the note was different from what was owed under his agreement charge of $150 per hour[,] I would not have signed that note.

¶49. The facts presented clearly establish that the promissory notes were prepared by Murphy, presented to Borries by Murphy, and executed by Borries upon Murphy's advice to Borries, when Murphy was acting as Borries's attorney. An attorney-client relationship certainly existed and, as a result, there was a fiduciary relationship between the parties. *Baker Donelson Bearman Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474, 486 (Miss. 2010). Yet the majority dismisses the significance of the fiduciary duty and gives no legal effect or significance to this fiduciary relationship.

¶50. In *Seay*, this Court held:

21

"The relationship of attorney and client is one of special trust and confidence. *The law requires that all dealings between them shall be characterized by the utmost fairness and good faith on the part of the attorney.*" An attorney-client relationship imposes the following duties, "(a) the duty of care, (b) the duty of loyalty, and (c) duties provided by contract." The duty of loyalty:

> is fiduciary in nature. In the present context its breach may take one of two forms. The first involves situations in which the *attorney obtains an unfair personal advantage, such as acquiring property from a client*; the second involves situations in which the attorney or other clients have interests adverse to the client in question. We have recently defined the lawyer's duty of loyalty to include a duty to:
>
> > safeguard the client's confidences and property, avoid conflicting interests that might impair the representation, and not employ adversely to the clients powers conferred by the client-lawyer relationship.

*Id.* (emphasis added) (citations omitted). "Any transaction in which an attorney may have taken undue advantage of the client is voidable." *Tyson v. Moore*, 613 So. 2d 817, 823 (Miss. 1992).

¶51. Because a fiduciary relationship existed between Murphy and Borries, we must "go behind the promissory notes[.]" Maj. Op. ¶ 32. The essential issue in this case is the agreement for the payment of attorney's fees, the amount of attorney's fees charged, and the reasonableness of the attorney's fees. Each is disputed by Borries.

¶52. Murphy testified that he prepared the promissory notes as part of his effort to be paid his attorney's fees,[6] and Murphy asked Borries to sign the promissory notes.[7] If this is the

---

[6] In his affidavit attached to the motion, Murphy testified, "[t]hat the promissory notes attached hereto . . . represent payment owed by the defendant, Kenneth R. Borries, to me, for legal services already rendered, and I noted on each promissory note the legal matter for

22

case, there is a dispute as to why the promissory notes were necessary, whether there was any consideration given to Borries for his execution of the promissory notes, the reason(s) Murphy asked his client to sign the promissory notes, and the representations made at the time the promissory notes were signed. Each is disputed by Borries in his affidavit. Based on these disputed facts, the jury may very well determine that the promissory notes are not enforceable because Murphy breached his fiduciary duty in obtaining his client's signature on the notes, which allowed the attorney to obtain "an unfair personal advantage." *Seay*, 42 So. 3d at 486 (quoting *Tyson*, 613 So. 2d at 823). In fact, this is the actual result reached by the majority. Murphy gets around a reasonableness review of his attorney's fees by inducing his client to sign the promissory notes.

¶53.    Borries's answer and his counterclaim addressed these issues. Borries testified as to a genuine issue of material fact in dispute over Murphy's breach of fiduciary duty in the presentation and execution of the promissory notes. Borries's answer and counterclaim also claim that the amount of attorney's fees charged was not reasonable. Therefore, Borries's affidavit is sufficient to establish that there is a genuine issue of material fact in dispute as to these issues.

¶54.    While this Court has not specifically addressed this issue, others have. In *Spilker v. Hankin*, Spilker executed five promissory notes for legal services rendered by Hankin in a divorce action. *Spilker v. Hankin*, 188 F.2d 35, 36 (D.C. Cir. 1951). After Spilker failed

---

which the payment was owed."

[7] Notably, the record reflects that at the time Murphy asked Borries to sign the promissory notes, an attorney-client relationship had existed for approximately eight years.

23

to pay on the notes, Hankin sued. *Id.* At trial, "Spilker defended on the ground of misrepresentation by Hankin when the notes were signed[.]" *Id.* The "decisive question" before the court was whether Spilker "[wa]s precluded by the doctrine of res judicata from denying liability on the notes." *Id.* The court ultimately held that the doctrine of res judicata should not be applied and that Spilker should be permitted to make any legal or equitable defense that appealed to the conscience of the trial court. *Id.* at 35. Importantly, in discussing the execution of the promissory notes, the court explained,

> Fee contracts between attorney and client are a subject of special interest and concern to the courts. They are not to be enforced upon the same basis as ordinary commercial contracts. Especially is this true where, as in this case, a contract beneficial to the attorney is executed long after the attorney-client relationship has commenced, when the position of trust is well established, and the litigation involved is reaching its culmination. "In some jurisdictions it has been held that such agreements are void. In other states contracts of such character are held to be affirmatively invalid on the ground of fraud, and the burden is on the attorney to show the fairness of the transaction in that the compensation provided for does not exceed a reasonable compensation for the services rendered or to be rendered." *In re Howell*, 215 N.Y. 466, 109 N.E. 572, 574 [(1915)]. Many courts, including the courts of this jurisdiction, have gone so far as to say that they are attended by a presumption of invalidity and overreaching. They are always subject to the close scrutiny of the court whenever judicial enforcement is sought. "The rule is founded in public policy, and operates independently of any ingredient of actual fraud or of the age or capacity of the client, being intended as a protection to the client against the strong influence to which the confidential relation naturally gives rise . . . ." *Thomas v. Turner's Adm'r*, 87 Va. 1, 12 S.E. 149, 153, [153] [(1890)]. Certainly this policy cannot be thwarted or overcome by having the client execute a promissory note or a series of promissory notes reflecting the attorney's charge to his client. When he seeks to enforce such a note the attorney cannot rely upon the usual commercial principles relative to negotiable instruments; he must rely upon the same basic considerations as if he were asking the court to enforce a fee arrangement not reflected in a note or notes.

*Id.* at 39 (footnote omitted).

¶55. I cannot agree with the majority's decision to resolve this case as a mere promissory-note-collection lawsuit, as suggested by Murphy. If such is truly the case, there would be no need to include an extensive discussion of the longevity, the volume of cases, and the complexity of the attorney-client relationship between Borries and Murphy. Morever, there would be no need to discuss the duties owed by a lawyer to his client or the requirement that attorney's fees be reasonable under Rule 1.5 of the Mississippi Rules of Professional Conduct. Instead, by this case, the majority simply reveals to Mississippi attorneys what can be done to avoid a reasonableness review of the fees charged.

¶56. Murphy asserts, "this is a simple case." Murphy claims he "is a lawyer suing a client who did not pay what he agreed to pay, and Borries is a client who, after enjoying the legal services rendered by Murphy, wants to get out of paying what he agreed to pay." But the record reflects otherwise. Borries's answer, his counterclaim, and his affidavit contradict Murphy's assertion that this case is "simple." Borries's affidavit shows that Borries is not trying "to get out of paying what he agreed to pay." While Borries disputes the amount owed, he acknowledges that "[i]n any case[,] [he] only owe[s] [Murphy] attorney['s] fees based upon what [Murphy] agreed to charge [(i.e., $150 per hour)] less what [Borries] ha[s] [already] paid [Murphy]."

¶57. The only question before this Court is whether it was proper to grant summary judgment to Murphy for the amounts due under the promissory notes and to dismiss Borries's counterclaim. I find that Borries has met his burden and has offered sufficient evidence to establish that there is a genuine issue of material fact in dispute and that Murphy is not

25

entitled to a judgment as a matter of law. M.R.C.P. 56(c). As such, the trial court erroneously granted Murphy's motion for summary judgment and dismissed Borries's counterclaim.[8]

¶58. For these reasons, I respectfully dissent.

---

[8] In a letter addressed to counsel, the trial judge explained that "the allegations raised in the Counter Claim have all been resolved against [Borries] in the ruling on the Summary Judgment granted [Murphy]. In making that ruling the Court found no genuine issues as to any material fact."